That's right, Your Honor. When you're ready. Good morning, Your Honors. Mark Bernsley, appearing for the appellant and debtor Jeremy Kintner. I plan to reserve five minutes for rebuttal. May it please the Court. So when I was preparing for this case and thinking about what might be a question in my mind if I was on the bench, I thought, what if, because you guys are familiar with the arguments, what if a debtor appeared, filed bankruptcy, and really his sole purpose or her sole purpose was to avoid a pay-first rule? What would that look like, and how would we analyze that? The first thing that I struggled with in that sort of instance was that I couldn't think of why a debtor or his counsel would do that because things need to make sense. If you look at Levitt, where the debtor was trying to use bankruptcy to facilitate cheating a former business partner or powers, where the debtor and a third party was trying to defeat a foreclosure, the debtor's design made sense. It might have been nefarious, but it was understandable. Here, a debtor in really good financial condition would never find it advantageous to file a bankruptcy to avoid pay-first. You've got interest running both ways. You're going to have to pay interest on what you ultimately owe. If you pay first, you're going to get interest back on what you pay. You've got the cost of bankruptcy over and above the cost of litigation, which are presumably going to be the same or close to the same either way, plus you're facing the stigma and the credit hit of bankruptcy. Can I interrupt you? Absolutely. As I read the decisions both of the bankruptcy court and of the district court, those two judges are both saying that you've provided or your client's provided no evidence that he is unable to pay. Is that right? They alluded to that, yes. More than alluded, they said it. Well, they did, but it's patently incorrect because they failed to… What evidence did you offer that your client is unable, as distinct from unwilling, is unable to pay? Absolutely. There's clearly a distinction. So if you look at the schedules, the schedules set forth the debtor's assets and his liabilities. His assets consisted of about $60,000 or so, all of which were exempt. So for bankruptcy purposes, they don't count. His debts exceeded, were in the ballpark of around $75,000. So he was upside down. He was upside down for bankruptcy purposes, not just by the $10,000 differential, but by some $75,000. What the bankruptcy court and the district court… So the district court went along with the bankruptcy court. But what the bankruptcy court was really relying on was the arguments of the state council. And what they focused on was the gross income shown by the debtor from the operation of the corporation that he owned. So it was essentially a third party. But if you look at the gross income, and this was a retail business. So if you only look at the gross, and the net was shown, but the net was ignored. If you look at the gross and you know this is a retail business where they were selling windows and doors, you have to know that there's cost of goods sold. So you've got the cost of windows. Those costs were ignored. He wasn't operating out of his home, so rent, that was ignored. So none of the expenses. And the judge embraced the state's argument that because they thought that the gross income was high, that therefore this debtor has plenty of money. But two issues. One, it's just not true, and there's no evidence to suggest that it's true. It was all based on argument. And second of all, for a Chapter 13, it doesn't matter. What you're looking at in a Chapter 13 is the ability of the debtor to make payments over either three or five years to satisfy the allowed claims. And if the debtor does that, his solvency is really irrelevant. And all of that. As you say, the debtor has to show inability to satisfy those claims over three to five years. Well, no. What the debtor has to do in a Chapter 13 is commit his disposable income. And there's, I guess, a formula that bankruptcy judges and bankruptcy lawyers use to determine what disposable income is. And they have to provide for allowed claims to be paid over a three to five-year period. Yes, I said it backwards. No, I'm sorry. And if there's enough income to pay them in full, they pay them in full. If there's not enough income, then whatever's left over gets discharged at the end of the bankruptcy. So, you know, the bankruptcy law is very specific and very meticulous in terms of how this all works. And solvency really isn't a part of it. It's not relevant. But this debtor was insolvent, as shown by his schedules, none of which was contradicted. There was absolutely no evidence to suggest that anything in the schedules was wrong. The only thing that was alluded to… You say he was insolvent. Hold on. He was insolvent because of the tax lien? I didn't get that. You're saying something that seems obvious to you, but I'm looking at somebody who makes $4,000 as a monthly income and his only debt is a $5,000 credit card debt. No, because… He has $3,000 in monthly expenses. The state filed a claim for $71,000. For the tax lien? For the taxes. Okay, but you didn't even… I mean, he didn't even list that. He listed it as zero. His claim was he didn't owe anything. So, I don't know why… I mean, you're only insolvent if he owes the tax lien and you're saying he didn't even owe it. Well, but the claim is there. The claim is… Well, but he didn't list it. He listed it as zero. Yes, he acknowledged the claim, but because he disputed it, the bankruptcy lawyer listed it as zero, but the state filed the claim. Sometimes debtors have claims that they don't know… I would actually push back on that. I think he did that entirely wrong, and I think it might have rubbed the district court wrong, because he could have disputed the claim and said how much it was, but he put in zero, which is sort of the whole point. He was trying to use this as a collateral attack on what had already been adjudicated that he owed a tax lien, and the bankruptcy court said, I'm not going to put up with that. Well, okay, you said a couple of things. First of all, I agree with you that if it were up to me, I agree that the $71,000 would have been listed and it still would have been disputed. I don't disagree that that would have been… Well, I don't see how it could be any different, because you came in and said he's insolvent, but he's absolutely not insolvent based on what he filed to the court. But, okay, two things. First of all, solvency is irrelevant. Okay, well, you're the one who injected it. Well, because the bankruptcy court jumped on that. But by law, that's not a requirement of the bankruptcy. It's not a requirement of the bankruptcy that the debtor be insolvent in Chapter 13. But the other thing that you suggested, which I don't agree with, not just that I don't agree with, it's wrong. You said that the tax debt was decided. The only thing that was decided by the state courts was that Kintner's ability to contest in the state forum was dependent on his payment first, which he did not do, so he had no state forum. With all due respect, that just can't be correct. There was a state court of appeals order that he had to pay a certain amount. Am I wrong about that? I believe so, yes. Well, yes and no, because there's – in tax, there's – On September 16, 2020, after the California Court of Appeal issued its writ of mandate in the first state lawsuit. So what was that writ of mandate? All right. Let me go back because many of these cases get something confused, and that is an assessment has to be made before the state can collect a tax. But that's not the end of the show. If Kintner had the financial ability tomorrow to go and pay this tax, even though he thought he didn't owe it, if he had the ability to go and pay this tax, he could file a claim for refund and be entitled to judicial review. No, I agree with that. I agree with that. That's the whole reason, right? I mean, you're trying to get around the Pay First Act, right? You don't want to have to go through that. Well, he can't. It's not that he doesn't want to. This debtor can't pay. His financial statements show that he can't pay. No, counsel, that's just not – so now we get back to insolvency. He makes $4,000 a month. He has $3,000 in monthly expenses. Not including the taxes. I understand that, but he could pay towards those taxes. He may not be able to pay the $71,000. But that's not a requirement of the Chapter 13, Your Honor. If the tax debt is allowable, it absolutely would have to be included in the Chapter 13. It has not been allowed. Here's my problem, and maybe I'm missing something, but the Bankruptcy Court and the District Court say repeatedly that your client was asked to provide evidence that he can't pay and that he refused to provide such evidence. No, Your Honor. Isn't that what they say? No. Well, they said that he didn't provide it. He was never asked to provide it. That's part of the problem here. First of all, he did file schedules, so his assets and his liabilities were listed. They were never contradicted. I want to ask you about that. Counsel, you're just making – so he had a business that he was drawing income from, correct? Yes. Did he have ownership in that business? He did. He owned the stock. And he didn't list it as an asset? He did list it as an asset. Where did he list that as an asset? I don't have the scale. If he lists that as an asset, then that just further undermines the idea that he was insolvent. Why? Because he had an asset that was valuable. But that's – the question of value is an entirely different question. Yes, he listed it. Excuse me. The corporation had a cumulative loss for the three years preceding the bankruptcy. That's disclosed in the schedules. So if it had a cumulative loss for the three years prior to the bankruptcy – That's on paper or that's – I mean, I thought it was very specific that one of the arguments that you were making was that you didn't provide the information on the corporation because that was – you had subpoenaed and gotten the federal tax returns, and so you didn't provide it. One of the issues that was raised by state's counsel was that the expense detail of the corporation wasn't listed on the schedules. And I argued why that wasn't required. But the income tax return, which contained all of that information, was provided to the U.S. trustee. So it was never hidden. And the failure to put it on the schedules was more a result of that not really being the correct line where that information was supposed to go. Because when a debtor gets income from a corporation, it's compensation or it's dividends. All of the different information that goes into the corporate tax return is not the debtor's income. It's not the debtor's expenses. It's the corporation's. So the information that's asked for on the bankruptcy schedule has to do with what would be like a Schedule C where the debtor is involved in their own business, and they take income in directly into their own account. But didn't he have full control over how much he was paid in salary from the corporation? He absolutely did. And I'm not suggesting that the information is irrelevant, and I'm not suggesting that it shouldn't have been provided if it was requested. And, in fact, the U.S. trustee did request it, and it was provided to the U.S. trustee. What I'm suggesting is that it wasn't required on the schedule so that the failure to put it on the schedule was not evidence of bad faith. And, look, what's mind-boggling to me is we're talking about a conflict between two policies, maybe three. One is the policy that a debtor's rehabilitation should be based on the debts that he really owes. And the other policy is the state's policy that they don't want to be strangled in the collection of taxes. So, like the Anti-Injunction Act, the state prefers that the taxes be paid first and that you fight about them later. But the state doesn't get any more money when the debtor doesn't have it. You know, that policy isn't advanced, and Section 505 usurps that anyway in saying whether or not paid. So this is all a lot of fuss about something that I think really isn't being understood, and I'm trying to find, you know, how I can help you understand what's really going on here because this is not about a debtor trying to get by a bankruptcy. If you look, I think one of the questions that's important here is assuming the debtor really owes the tax, does he need to be in bankruptcy? That, to me, is sort of the key to the whole thing here. And the answer in this case is yes. If he owes that $71,000, he's upside down, and he's in big trouble if he's not in bankruptcy. And that's why he needs to be here. So yes, I agree with Your Honor that it would have been much better for the debtor if in scheduling the tax debt they put the number there. But to me, that's harmless because a claim was filed, and everybody knows what the number is. And nobody's, it's been hidden from no one. So the debtor is still insolvent, and particularly if he owes the tax, he needs to be in bankruptcy. And by dismissing the case, the court gave the debtor the worst case scenario. Yes, you have to pay the tax. No, you have no way to pay it. And you have no bankruptcy relief. So the debtor's been screwed. And what is communicated to future debtors? I mean, what's the debtor done wrong here? Well, what is communicated is don't file protective bankruptcy proceedings to get out of a tax debt. Litigate the tax debt. If you challenge it, challenge it. But don't challenge it collaterally in the bankruptcy court and file a protective bankruptcy petition. That's what's communicated. I don't have a problem with that. Okay, but the debtor can't pay outside of bankruptcy. And Section 505 specifically gives him the right to do so in bankruptcy. So the question really is, if the debtor owes the tax debt, does he need to be in bankruptcy? And then if the answer is no, then I think all of the questions that you're answering. According to you, that's a question that's still open. Where is that being litigated? You want to litigate it in the bankruptcy court. That's what the bankruptcy court got upset about is don't come here to re-litigate this issue. But it's not being. If you think. It's not what? It's not being re-litigated. Well, then why are you in bankruptcy? Where is the tax debt? The tax debt is in dispute, just as it would be in dispute if the taxpayer could afford to pay it and sued in a refund action. You guys, this court is faced, for example, with 6672 cases all the time. Where a debtor goes into bankruptcy and the debtor's been assessed a trust fund recovery penalty and they need to litigate that. This case is similar. You've got an insolvent debtor with a big tax debt that he wants to dispute. You've got to stop saying he's an insolvent debtor. The only way he's an insolvent debtor is if he owes the tax. Right. That's $71,000 in taxes. And you, by your own definition, have said he doesn't owe it. Well, no. I'm saying it's disputed. You've got to stop making these arguments. The tax. He disputes the tax debt. He legally owes it. But he disputes it. That is to say, let me summarize what your position is, if I understand it correctly. If he, in fact, owes this tax debt, he's insolvent. If he does not owe the tax debt, he's not insolvent. Is that right? That's correct. And so he goes into bankruptcy saying, I've got all these claims against me. And if the claims are all valid, I'm bankrupt. That's correct. And now I want to figure out in the bankruptcy proceeding whether all of these claims are valid. And the key claim is I'm trying to figure out whether this tax claim is valid. To me, the question is, has he sufficiently shown to the bankruptcy court and then to the district court that if the claim against him based on the tax puts him into insolvency, has he sufficiently shown that? And as I read both the district court and the bankruptcy court, they seem to say that he was given many opportunities to show that if the tax debt were assessed against him, he would be insolvent, but he's refused to do that. That's what they say. And you say, but you have tried to do that. Am I understanding your position correctly? Well, I think you've asked the perfect question. And I think the answer is that in the first instance, he provided that the schedules and the claims answer the question. And I think that what the debtor's failure was that in responding to the motion to dismiss, he didn't address that question. But the court never asked the debtor the question until deciding the dismissal and saying you didn't submit the evidence. But the motion to dismiss was not one that requested the evidence. And I don't think that the bankruptcy lawyer understood that answering that unasked question would have solved the problem. At what point did you begin to represent this client? Were you representing him? I was representing the debtor on the tax side. And he had bankruptcy counsel that was representing him on the bankruptcy side. I see. And so when the two motions to dismiss were made, one in the adversary proceeding and one in the bankruptcy court, I handled the one in the adversary proceeding and bankruptcy counsel handled the one in the bankruptcy court. And frankly, it might have been over his head. Okay. Why don't we hear from the other side? We've taken you well over. We may want to hear from you again. We'll give you some time for rebuttal. Thank you, Your Honor. Good morning, Your Honor. Deputy Attorney General Laura Robbins on behalf of the California Department of Tax and Fee Administration. In this decision, the bankruptcy court and the district court were right. The bankruptcy court did not clearly err in finding bad faith, and the bankruptcy court did not abuse its discretion in dismissing this case after finding bad faith. Kintner did not introduce evidence that he was unable to pay. I've represented the state tax agency in both of the state court litigations in the bankruptcy court and in the adversary proceeding within bankruptcy. And the bankruptcy, it's not in the record, but the bankruptcy judge asked the attorney, Mr. Hagan, several times to amend, to provide that information. He also asked him to amend to schedule the $71,000 tax debt. It seems like it's pretty clear that if he owes the $70,000 tax debt, he is insolvent. Is there any disagreement about that? Well, Mr. Hagan disagreed, but he said that he didn't need to schedule it because it wasn't clear if he owed it. Wait, wait, wait, back up. Sorry, Your Honor. Did Mr. Hagan disagree with the idea that if he owed the $70,000, or $71,000, I guess, that he would have been insolvent? I mean, he seems to be, I read his argument to be, I'm not insolvent because I don't owe it. And I thought he was trying to collaterally attack it. Now, maybe I'm misinterpreting what was going on here. Your Honor, I'm sorry, I misspoke. He did say he didn't owe it. The problem here is that the debtor had the burden to provide information to show that he truly was insolvent, to provide additional information about his business, as both the bankruptcy court and the district court have said, and he didn't do so. So it's his burden to show that he's insolvent and, you know, that he doesn't have the money to pay back this debt. And he didn't meet that burden, Your Honor, in his – Well, I mean, why doesn't this meet it? I have $4,000 of monthly income. I have a $5,000 credit card debt, and I have $3,000 in monthly expenses. So I've basically got – I mean, is the idea that I could peel off $1,000 a month, less than that because of the credit card debt, say I could peel off $700 a month, it's going to take me 100 months to pay it off. I mean, is that – and you're arguing that that means you're not insolvent because you technically could pay it. Yes, Your Honor. And further, he was supposed to provide further information on his Schedule I in line 8A, the separate statement showing how he derives that net income from gross receipts and expenses, and he didn't do so. It's not in the record, Your Honor, but the bankruptcy court asked him to amend to provide that information, and he didn't do so. And, Your Honor – That's not what we just heard from your opposing counsel. I know, Your Honor. He says that he was never asked. He wasn't the counsel in the bankruptcy action. He wasn't the adversary. So he's given us inaccurate information. Is that what you're saying? I believe so, Your Honor. I have my memory, and I would add that the – something that might show that he never amended is Mr. Hagan, who was bankruptcy counsel, moved for reconsideration, and along with this motion for reconsideration, after seeing the court's ruling that he had lost, you know, for not providing this information, he didn't amend his schedule, and he didn't provide it. What he's doing is providing a conclusory statement, I'm insolvent, without meeting his burden of showing why, and that is what I'm – Okay, can I ask a more specific question? Yes, Your Honor. The state's position is even with the $71,000 debt, tax debt, you don't believe that he's insolvent. Is that correct? Yes, Your Honor. At least based on the information that is current, was produced. Let me be a little – that might not have been the best answer. I don't believe he's met his burden to show that he's insolvent because he didn't provide the background details that would support his bottom line statements. He didn't provide the detail that would meet his burden of showing that he was insolvent. Let me ask this. Let's assume that we agree with you that he didn't show – he didn't carry his burden to show that he's insolvent. And so we affirm. He goes and finds himself another bankruptcy lawyer, and that bankruptcy lawyer tries – so we declare bankruptcy again. And now he comes in with all kinds of evidence. Let's assume it's truthful. Yes, Your Honor. Assume. That shows that if you count the $75,000 tax liability, $70-some-thousand tax liability, he is indeed solvent. Can he do that, or is he stuck with some form of preclusion out of this lawsuit? Your Honor, I think that's a really – that's a question where there would be different facts. But I don't think there's any bar per se that would always prohibit him from doing so. If he could meet his burden of proof and he were truly insolvent and he still had this tax debt, then I believe that he would be able to do so because he showed bad faith. The bankruptcy court said he showed bad faith here for various reasons. But if he filed a different lawsuit where he provided the documentation and provided all of the information to not show bad faith, assuming that that was possible to do, I believe that he could do so. Well, no, that was my question. Is it possible to do so? And you said, assuming it's possible to do so, he could do so. No, I ask you, could he do so? So what's your answer? My answer is, assuming arguendo that he had those facts, he would be able to bring the case. But, and here's my caveat, there's also another issue that the bankruptcy court didn't reach on Section 505A2A, and the case would be possible assuming that 505A2A did not bar his action. And you're going to have to help me. 505A2A says what? Sometimes lawyers assume that I've got the whole code in my head. Determination of tax liability, and it was discussed in the Mance case, which your Honor wrote. It's pretty old, though, and it said, but it didn't reach this issue. It got up to it but didn't reach it. The court may not so determine the amount or legality of a tax fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title. So that's another issue that would have to be addressed, whether that 505A2A bars the action. But assuming for the sake of argument it doesn't, and assuming that the taxpayer, the debtor, Mr. Kintner, could provide all the documentation, then yes, he would be able to do so in bankruptcy. Here's what I'm struggling with. I think everyone is willing on both sides, and you can object to this characterization. I don't think you will, but it seems to me that everyone on both sides is saying he is legitimately in bankruptcy court if this tax debt that he may or may not owe is counted as a debt. Is that right? If he can meet his burden to show that he doesn't have the ability to pay and that he's not gaming through his feet to get around state court regulations. Let me say, I asked the question inappropriately. If the tax debt, along with all of his other debts, and then putting them, balancing them off against the assets and the income, shows that he's in solvent, he can come into court, and he can then, in the bankruptcy court, contest the liability for the tax lien. Yes, assuming that Section 505A2A does not bar his right to do so. Yes, Your Honor. So the real question is whether or not he satisfies that basic criterion in terms of balance off the debts versus the assets or the obligations versus the income. And my question is, was he given enough opportunity in the bankruptcy court to provide that information? You're saying he was repeatedly invited to do so and he just never did it. Yes, Your Honor. Okay, so the issue really is not what would happen if he were to provide the information. The issue is whether or not he was invited to provide the information and he failed to do so. And he was invited to do so and he failed to do so. Yeah, that's the question. Okay. I have a question for you. If we were to find that the bankruptcy was filed in bad faith to avoid the pay first rule, does that mean that there is effectively a bar to challenging the state tax liability and bankruptcy proceedings? In this particular action, yes. But assuming that he had a bankruptcy that were a subsequent bankruptcy where he still had this tax debt that was not brought in bad faith, I believe he'd be able to challenge it. He also still had proceedings that were before the administrative tribunal, the State Board of Equalization. And at any point, if he has the ability to do so, he can pay the debt and he can challenge it in the superior court after filing a claim for a refund through a tax refund action. Was there a finding made that the bankruptcy was filed in bad faith to avoid the pay first rule? Yes, Your Honor. That was one of the findings made by the bankruptcy judge. Why would that be sufficient for the outcome of this case, that finding alone? Your Honor, I believe that it probably would. It wasn't all that was present here, but it might only because of the timing, because there were two state court actions and this case was filed right before. It was filed after the mandate issued from the Court of Appeal and after the decision in the second state court action. And it was filed before judgment was issued. And so just the timing alone might have been enough for the bad faith finding, but that is not all that the bankruptcy court relied on. Thank you for your response. Thank you. Unless anyone has any more questions, I'll submit. Any further questions from the bench? Okay, thank you. Now, we took you well over. Would you like a minute for rebuttal? Thank you. Thank you, Your Honors. I'm starting to get a little bit of an inkling of where some of the confusion is. The bankruptcy court, I think, because it thought Kintner could simply pay the tax liability, that he was in bad faith in filing bankruptcy to avoid doing that. But the facts don't bear that out. Kintner couldn't pay the tax. So respond then to your adversary's statement that he was repeatedly asked to provide information to show his inability, and he never did. I have found no evidence in the record, and there are transcripts in the record, of anything like that. Now, I've not read transcripts. Are those transcripts in excerpts of record that we have? I believe so, yes. Okay, I've not looked at them at this point. I'm not aware of specific requests for Kintner to supplement the record. I think the bankruptcy court, for whatever reason, thought that in response to the motion to dismiss, would have responded to some of counsel's allegations by providing some of that information, which he didn't do. But the court never said to him, that I'm aware, that you should do this. But if the other side says you don't have the information, and he never provides it, that's not very good lawyering. Well, I understand. But the schedules provide information. The tax return was provided to the trustee. So if there were failures, they weren't bad faith failures, and this was a dismissal for bad faith, not for repeated failures to provide information that had been requested. And I think that the jump to bad faith, because of some other failures, is a very large leap. Well, let me say this as an argument in favor of the bad faith finding. I'm just spinning this out. I'm not necessarily agreeing with it. If it is bad faith for someone to file in bankruptcy when, in fact, the person is not insolvent and would allow that, but what they're really doing is forum shopping and trying to get a federal bankruptcy court to invalidate the pay-first rule, that strikes me as bad faith. But the question then is, is the person, in fact, solvent and seeking to hide that in order to get the adjudication out of the bankruptcy court? And the bankruptcy court appears to say, listen, as far as I can tell, you are solvent, and you're just not responding when they say, listen, you're not showing us that you're insolvent. And he never shows it. So, I mean, that's what the court below seems to have thought. Well, except that the filing of a Chapter 13 does not require solvency. The reason why solvency is called. I should say qualified to file 13. That's right. He has to meet qualifications, which he met. Solvency became relevant only in this case because of the judge's assumption that he was solvent enough to simply pay the tax, but didn't want to. But there is no evidence to support that conclusion. None. Counsel, you're twisting. Whose obligation is it to come forward with the evidence? Well, in the first instance, it was his, but he did that by filing schedules, none of which were shown to be wrong. Kepner is self-determining how much the company pays him. Why are the company's growth revenue and expenses not relevant to Chapter 13? I do not suggest that they are not relevant. In fact, the trustee asked for the tax return so that the trustee could see those expenses. And in addition, there was a 341A hearing, which gave all creditors the right to examine the debtor and find out whatever they wanted. And I don't have any problem with the judge having ordered the production of the tax return or making further inquiry. My only argument on brief was that line 8A was the wrong line for the income taken by this debtor and that the schedules themselves did not require third-party corporate inside information to be disclosed, so it wasn't in bad faith for it not to be there. Not that it would be irrelevant or that there could or should be no inquiry made. It's open game. I think it's a very fair question to be asked and have answered. But not putting it on the schedules was not bad faith. So long as he doesn't tell how much he's getting paid, doesn't that strike sort of a question before the bankers' report as to what is really fundamental to their decision-making process? He doesn't indicate anything about how much he's getting paid. Well, there were some gaps there, and I don't deny that it could be relevant. But don't forget in Chapter 13, the relevance of the financial information is how much can this debtor pay on a monthly basis toward allowed debts. That's really the question. The question isn't, if you weren't in bankruptcy, could you afford to pay this? Because let's assume that the taxes were scheduled, were not disputed, and were owed. And let's assume that the debtor had a lot of money. He could still file Chapter 13. You don't know why a debtor wants to be in 13. Maybe he's got cash flow problems. Maybe all his assets are tied up in other investments. So he's entitled to be in 13. The question becomes now, how much can he pay on a monthly basis toward allowed debts? If he's got a lot of income and a creditor would get 100% payment in Chapter 7, that creditor is entitled to be paid in full over the three to five years. So the debtor would have to pay enough over that period of time, three to five years, to pay that creditor in full. So there's an analysis. There's a symmetry to the way the bankruptcy code works, and it really does provide answers for all of these questions and how they need to be addressed in a Chapter 13 bankruptcy. But the issue in a 13 is how much can the debtor pay on a monthly basis toward allowed debts? And that's the question, regardless of what other assets may be out there. The other assets, again, may be relevant to what a creditor would be entitled to in a Chapter 7 because they would be entitled to get in a 13 at least as much as they would get in a 7. So it's part of the analysis. But the financial information is there for a determination of how much has to be provided toward allowed debts. And if the debtor was a little off for whatever reason at the point in time that this motion was made, it didn't matter because the allowed debts, don't forget the tax debt, was still disputed. It was the subject of an adversary proceeding, and it was up to the bankruptcy court to determine, is it allowed in full, is it allowed in part, is it allowed in none? That was all on the table. So until it was an allowed debt, it wasn't part of the group that had to be paid. So the bankruptcy code provided for how all of this stuff was supposed to settle out. The bankruptcy judge just thought that the sole reason for this was for Kintner to avoid the pay-first rule. That only makes sense if... That's a pretty defensible position, counsel. I've got to be honest with you. That's not a clear, in my view, that's not a clearly erroneous conclusion. Well, it is if you include the tax debt. He's got obligations of more than $70,000 and assets, all of which were exempt, so for bankruptcy purposes, zero, but even if it wasn't zero, $60,000, so he's underwater. You're making an argument based upon the record before us, and I understand that. But the bankruptcy judge was determining whether he's telling the truth, and you can tell me why, and you're doing a good job of maybe why the bankruptcy judge was wrong, but if the bankruptcy judge makes a finding of why he's doing it, and it's affirmed on appeal, how can we undo that? The bankruptcy judge was convinced that it was wrong for Kintner to want to dispute his tax debt, and everything the bankruptcy judge thought from that point on was colored by the fact that he thought it was wrongful to want to use bankruptcy to dispute a tax debt. What do you mean colored by? You mean that his findings and his determination was tainted, and if you believe that, was that brought up in the appeal? Yeah, I think the judge legally erred by thinking that a solvent debtor was not entitled to the provisions of Section 505 of the Bankruptcy Code, and as a legal matter, that's simply not true. And that was reviewed by the district court in the bankruptcy appeal. What did the district court find? Did the district court find that those motives were there, or did the district court affirm? The district court affirmed. I have, yeah, the district court affirmed. How can we say the district court, who's looking at the same record that you're looking at now, should be reversed? What is there about the district court's finding? I think the district court embraced the bankruptcy court and basically embraced the same error of thinking. You know, maybe it's me. I think there are legal issues and distinctions that the court is not seeing, and to me, it comes back to that question that if the debtor owes the tax, which was disputed, but legally at the time he filed, he owed it, but it could still be disputed, and it still can today. If he can pay the tax, he can go to court, and he can dispute it. But let's assume whether it's in bankruptcy court or out of bankruptcy court, somehow he gets before a forum, and the court decides you owe the tax. All of your arguments denied. You owe the tax. He's got to be back in bankruptcy court. He can't afford to pay it. His schedules show that he can't afford to pay it. The evidence, there may have been insinuation. Maybe the judge wanted something else from Kintner, but Kintner's bankruptcy lawyer didn't understand that there was something else he needed to show. But on the record of this case, there is nothing other than suggestion and innuendo that any of his schedules, any of the numbers, anything he said was materially inaccurate. Nothing. Nothing. But that's also not why the district court, in a way that you're sort of skirting the issue because that's not why the district court found him to be in bad faith and the bankruptcy to be in bad faith. He didn't say that he filed false statements. So, I mean, I'll give you that point, but it's not really relevant to what the best bankruptcy court found. Well, but it's pertinent because the bankruptcy court thought Kintner was, Kintner's bankruptcy was solely to avoid the pay first rule. And it can't be because if you can afford to pay it, it never makes sense to do that. It's just implausible. And to prove that, I think the litmus test is, as I said, if you do owe it, do you need to be there? And the answer is yes. And so, to me, that's a legitimate reason to be in bankruptcy. And if you have a legitimate reason to be in bankruptcy, you have a legitimate reason to use Section 505. It's not clear to me, counsel, that the argument as you framed it up was ever actually made to the bankruptcy court. And maybe that would have appeased him somewhat. My sense is the bankruptcy court got very frustrated because he felt like he was getting harangued, and there's some evidence to support that. I don't disagree with that. I think that's right. But I think that the result of that. Now we should undo it and send it back because you've sort of, you know, elucidated what's really going on here. I'm sorry? Now you think we should undo that because you've had the opportunity to sort of make clear what should have been made clear to the bankruptcy court, and you should have the opportunity to go back and do that. I think that's right. And I think the reason for that, yes, yes, that's the answer. But I think the reason for that is both because that confusion resulted in both an error of law and a jump to conclusion in terms of facts based on a lack of real evidence contradicting the schedules which were there and were not adequately considered by the court. But yes, if the court had said specifically, well, yeah, we have these schedules, but we have doubts about these schedules, and we really want to see more evidence that there isn't this or that or we want you to produce this, and the debtor said, no, I'm not going to do that, absolutely, out, bad faith. I don't disagree. But here there was a motion to dismiss. I mean, with all due respect, my sense is that's how the bankruptcy court interpreted this. It may have in its mind, but if you look at the record, there is a motion to dismiss for bad faith before there's any opportunity where the court clearly says to the debtor, look, these are the things we have concerns about, order to show cause, whatever you want to call it. We need to see this, this, and this to show that. The bankruptcy lawyer didn't understand that this kind of information would have solved the problem. And the result of that was a jump to conclusions on the facts and errors in law as to when 505 can be embraced and utilized or not. So take it just the way you said it, that the information might well be available that would have satisfied the bankruptcy judge, would have satisfied the bankruptcy judge that the debtor's financial situation was such, if we counted the tax liability that he was entitled to file for Chapter 13. But the bankruptcy lawyer fails to understand this, fails to provide it. So we're supposed to do what? Save the bankruptcy lawyer from his mistake when it was pretty clear what he was supposed to do, at least pretty clear to us at this point what he was supposed to do, but he never did understand that. He gets another shot at this? Is that the idea? But the question is when it became pretty clear. It becomes pretty clear in hindsight when you read the judge's opinion and what his doubts were, and we have this discussion. But to a bankruptcy lawyer who is responding to a motion to dismiss for bad faith, who has never been expressly asked by the court to resolve a specific doubt about some factual issue, that's a different point in time. Okay, I get it. Okay, we've taken you well over or maybe you've taken us well over. I'm here for you. No, I thank both sides for trying to help us out in this case. It seems to have gone sideways at some point, and the question is what do we do about it? Okay. Thank you. Thank both sides for your arguments. Case of In re Jeremy Daniel Kintner submitted, and that concludes our argument schedule for the day. We had one submit. Did I mention that? Mauricio Hernandez Garland was submitted on the briefs, and we're now in adjournment. All rise. This court for this session stands adjourned.
judges: WALLACE, FLETCHER, NELSON